865 So.2d 1278 (2004)
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, Petitioner,
v.
SUN-SENTINEL, INC., Respondent.
No. SC03-410.
Supreme Court of Florida.
February 5, 2004.
*1280 Charles J. Crist, Jr., Attorney General, Christopher M. Kise, Solicitor General, and Lynn C. Hearn, Deputy Solicitor General, Tallahassee, FL, for Petitioner.
John R. Hargrove and W. Kent Brown of Gordon Hargrove & James, P.A., Fort Lauderdale, FL; and David S. Bralow, Senior Counsel/Florida Media, Tribune Company, Orlando, FL, for Respondent.
Gregg D. Thomas and Rachel E. Fugate of Holland & Knight LLP, Tampa, FL; and George Freeman, The New York Times Company, New York, NY, for Amici Curiae The First Amendment Foundation; The Tampa Tribune; WFLA-TV News Channel 8; Orlando Sentinel Communications; New York Times Regional Newspapers on behalf of The (Lakeland) Ledger; Sarasota Herald-Tribune, (Ocala) Star Banner, and The Gainesville Sun; Florida Today; News-Press; Pensacola News Journal; WTLV-TV; WJXX-TV; and WTSP-TV.
BELL, J.
This case arises out of a petition filed by Sun-Sentinel pursuant to section 119.07(7)(a), Florida Statutes (2002), to gain access to certain public, but confidential, records maintained by the Department of Children and Families (DCF).[1] We must decide three issues: whether DCF waived its objection to the circuit court's personal jurisdiction when it simultaneously moved to transfer venue; whether Sun-Sentinel was required to serve DCF with the petition; and whether the circuit court erred in refusing to apply the home venue privilege.
The district court did not reach the merits of the service of process/personal jurisdiction issue because it held that DCF waived its objection by seeking a transfer *1281 of venue. Dep't of Children & Families v. Sun-Sentinel, Inc., 839 So.2d 790, 791 (Fla. 4th DCA 2003). The court also held that the circuit court did not err in refusing to apply the home venue privilege even though none of the recognized exceptions to the privilege were satisfiedbecause "[n]one of the policies that motivated the adoption of the home [venue] privilege are present in this case." Id. at 792.
The district court's decision expressly and directly conflicts with Jacksonville Electric Authority v. Clay County Utility Authority, 802 So.2d 1190 (Fla. 1st DCA 2002), which held that trial courts are bound to apply the home venue privilege unless one of the three recognized exceptions is satisfied, regardless of whether application of the privilege in the particular case is supported by the policy reasons that justify the privilege.[2]
In part I of this opinion, we briefly discuss the factual and procedural history of the case. In part II, we hold that a motion to transfer venue, filed simultaneously with a timely asserted objection to personal jurisdiction, does not waive the jurisdictional objection. With respect to this issue, we disapprove the opinion below and the opinion in Hubbard v. Cazares, 413 So.2d 1192 (Fla. 2d DCA 1981). Because DCF did not waive its objection to the court's personal jurisdiction, we reach the merits of that issue. In part III, we hold that section 119.07(7)(a) requires formal service of process on DCF. Accordingly, the circuit court erred in denying DCF's motion to dismiss the petition for insufficient service of process and lack of personal jurisdiction. And in part IV, we approve the First District's holding in Jacksonville Electric that a trial court must apply the home venue privilege unless one of the recognized exceptions to the privilege is satisfied. However, we approve the result of the district court below because we now create a fourth exception to the home venue privilege. As we will discuss in greater detail below, this new exception is similar to the "joint tortfeasor" exception that we created in Board of County Commissioners v. Grice, 438 So.2d 392 (Fla.1983). Because this case falls within this new exception, the circuit court did not err in refusing to apply the home venue privilege.

I. BACKGROUND
The State brought criminal child neglect charges against Donald and Amy Hutton. The charges were brought in the Palm Beach County Circuit Court. While the criminal case was pending, Sun-Sentinel, seeking access to DCF records concerning the Huttons and their children, filed a section 119.07(7)(a) petition. Section 119.07(7)(a) provides that
[a]ny person or organization, including the Department of Children and Family Services, may petition the court for an order making public the records of the Department of Children and Family Services that pertain to investigations of alleged abuse, neglect, abandonment, or exploitation of a child or a vulnerable adult. The court shall determine if good cause exists for public access to the records sought or a portion thereof. In making this determination, the court shall balance the best interest of the vulnerable adult or child who is the focus of the investigation, and in the case of the child, the interest of that child's siblings, together with the privacy right of other persons identified in the reports against the public interest. The public *1282 interest in access to such records is reflected in s. 119.01(1),[[3]] and includes the need for citizens to know of and adequately evaluate the actions of the Department of Children and Family Services and the court system in providing vulnerable adults and children of this state with the protections enumerated in ss. 39.001 and 415.101.
§ 119.07(7)(a), Fla. Stat. (2002). Sun-Sentinel filed the petition in the Palm Beach County Circuit Court and faxed a copy of the petition to DCF.
DCF moved to dismiss the petition for insufficient service of process, lack of personal and subject matter jurisdiction, and failure to state a cause of action. DCF also invoked the "home venue privilege" and moved to dismiss the petition for improper venue or, in the alternative, to transfer the case to Leon County, the county in which DCF maintains its headquarters. The Palm Beach County Circuit Court denied DCF's motions. The court held that section 119.07(7)(a) does not require formal service of process. The court declined to apply the home venue privilege because the petition was not in the nature of a lawsuit against DCF.
The Fourth District Court of Appeal affirmed. First, the district court held that DCF waived its objection to the circuit court's personal jurisdiction by seeking to transfer venue to Leon County. Dep't of Children & Families, 839 So.2d at 791. Second, the district court held that the trial court did not err in refusing to apply the home venue privilege. Id. at 792.

II. WAIVER
DCF argues that the circuit court should have dismissed the petition for lack of personal jurisdiction because Sun-Sentinel did not effect formal service of process. Sun-Sentinel argues that DCF waived its objection to the court's personal jurisdiction by seeking a transfer of venue. The district court agreed with Sun-Sentinel and held that DCF waived its objection. We disagree.
In Babcock v. Whatmore, 707 So.2d 702, 704 (Fla.1998), we held that "a defendant waives a challenge to personal jurisdiction by seeking affirmative reliefsuch requests are logically inconsistent with an initial defense of lack of jurisdiction." The question here is whether DCF's motion to transfer venue was a request for affirmative relief. We have not previously addressed this issue and the district courts that have are conflicted. The district court below relied on the Second District's decision in Hubbard v. Cazares, 413 So.2d 1192 (Fla. 2d DCA 1981). Hubbard, however, conflicts with the Fourth District's decision in Dimino v. Farina, 572 So.2d 552 (Fla. 4th DCA 1990).[4] With respect to this issue, we disapprove the opinion below and that in Hubbard, and we approve the opinion in Dimino.
Hubbard held that "a request for change of venue following a timely asserted challenge to personal jurisdiction is a request for affirmative relief which constitutes a waiver of the jurisdictional challenge." 413 So.2d at 1193.[5] The Hubbard Court relied on two non-Florida cases: Killearn *1283 Properties, Inc. v. Lambright, 176 Ind. App. 684, 377 N.E.2d 417 (1978), and Sangdahl v. Litton, 69 F.R.D. 641 (S.D.N.Y.1976). The court's reliance on these two cases is unpersuasive, and we refuse to adopt it. Both Killearn Properties and Sangdahl involved change-of-venue requests that preceded objections to personal jurisdiction. Here the motion to transfer venue and the motion to dismiss for lack of personal jurisdiction were made simultaneously. This distinction was recognized by a different district of the Indiana Court of Appeals in State v. Omega Painting, Inc., 463 N.E.2d 287 (Ind.Ct. App.1984).
In Omega Painting, the court "expressly disavow[ed]" the Hubbard court's reliance on Killearn Properties. 463 N.E.2d at 292 n. 7. The court stressed that Killearn Properties was predicated upon "a change of venue request filed prior to the assertion of a lack of personal jurisdiction," rather than a change-of-venue motion "filed contemporaneously with the State's answer asserting the lack of personal jurisdiction." Id. at 292. The court held that
once the defense of lack of personal jurisdiction is properly preserved, the defendant may proceed with a defense on the merits without waiving the jurisdictional issue. Accordingly, we cannot say that such a request for a change of venue, filed contemporaneously with or subsequent to the proper preservation of the jurisdictional question, seeks the affirmative relief of the court and, thereby, acts as a waiver of ... the jurisdictional claim.
Id. (citation omitted).
The court disagreed with the Hubbard court's characterization of a change-of-venue motion, filed subsequent to the preservation of the jurisdictional challenge, as "go[ing] beyond matters of defense and seek[ing] affirmative relief." Id. at 292 n. 7 (quoting Hubbard, 413 So.2d at 1193). In this regard, the court distinguished a defendant's filing of a permissive counterclaim, a third-party crossclaim, or a counterpetition in a divorce proceedingall of which had been held by various courts to be requests for affirmative relief that waive a party's jurisdictional objection from a request to change venue, which the court characterized as "a legitimate request in the defense of an action." 463 N.E.2d at 292 n. 7.
The Hubbard court's reliance on Sangdahl is also unpersuasive. In Sangdahl, the United States District Court for the Southern District of New York held that the defendant had waived his challenge to the court's personal jurisdiction. But again, the court focused on the fact that the defendant's motion to change venue preceded the defendant's motion to dismiss for lack of personal jurisdiction. The defendant waived his objection to the court's personal jurisdiction by failing to raise the objection, pursuant to Federal Rule of Civil Procedure 12(b)(2), prior to or simultaneously with his forum non conveniens motion. See Sangdahl, 69 F.R.D. at 642 (quoting Federal Rule of Civil Procedure 12(g)) ("If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted....").
We believe that the decision in *1284 Dimino, which conflicts with Hubbard,[6] is more persuasive. The Dimino court relied on Florida Rules of Civil Procedure 1.140(b) and 1.140(h). Rule 1.140(b) states that
[e]very defense in law or fact to a claim for relief in a pleading shall be asserted in the responsive pleading, if one is required, but the following defenses may be made by motion at the option of the pleader: ... (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process.... A motion making any of these defenses shall be made before pleading if a further pleading is permitted.... Any ground not stated shall be deemed to be waived except any ground showing that the court lacks jurisdiction of the subject matter may be made at any time. No defense or objection is waived by being joined with other defenses or objections in a responsive pleading or motion.

Fla. R. Civ. P. 1.140(b) (emphasis added). Rule 1.140(h) states that "[a] party waives all defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule or, if the party has made no motion, in a responsive pleading." Fla. R. Civ. P. 1.140(h). As the Dimino court stated:
Because appellant would otherwise have waived the defense of improper venue, the motion was defensive in nature rather than a request for affirmative relief, and his challenge to the court's jurisdiction was not waived by being joined with the motion for change of venue.
572 So.2d at 555. We agree with this reasoning.[7] We approve the opinion in Dimino on this point, and we disapprove the opinion below and that in Hubbard to the extent that they conflict with Dimino and our opinion here.[8] We hold that a motion to transfer venue, filed simultaneously with a timely asserted objection to personal jurisdiction, does not waive the jurisdictional objection.[9]

*1285 III. SERVICE OF PROCESS/PERSONAL JURISDICTION
Because DCF did not waive its objection to the circuit court's personal jurisdiction, we will now address the merits of the objection. Sun-Sentinel argues that it was not required to serve DCF with the petition because section 119.07(7)(a) does not contain an explicit service of process requirement. Section 119.07(7)(b), on the other hand, does contain an explicit service of process requirement:
In cases involving serious bodily injury to a child or a vulnerable adult, the Department of Children and Family Services may petition the court for an order for the immediate public release of records of the department which pertain to the protective investigation. The petition must be personally served upon the child or vulnerable adult, the child's parents or guardian, the legal guardian of that person, if any, and any person named as an alleged perpetrator in the report of abuse, neglect, abandonment, or exploitation.

§ 119.07(7)(b), Fla. Stat. (2002) (emphasis added). Sun-Sentinel argues that if the Legislature had intended to require that petitions filed under section 119.07(7)(a) be served on the agency, it could have included an express provisionjust as it did in subsection 7(b). Because it did not, Sun-Sentinel argues, formal service of process is not required.
We reject this argument and hold that a section 119.07(7)(a) petitioner must serve DCF with the petition. The Florida Rules of Civil Procedure apply to "all actions of a civil nature." Fla. R. Civ. P. 1.010. Rule 1.050 provides that civil actions are commenced when the complaint or petition is filed. Rule 1.070 provides that "[u]pon the commencement of the action, summons or other process authorized by law shall be issued." Section 48.031(1)(a), Florida Statutes (2002), states that "[s]ervice of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading." (Emphasis added.) Section 48.111(2), Florida Statutes (2002), provides that "[p]rocess against any public agency, board, commission, or department not a body corporate ... shall be served on the public officer being sued or the chief executive officer of the agency, board, commission, or department."
We do noteven when we read subsection (7)(a) together with subsection (7)(b), as Sun-Sentinel suggestsperceive a legislative intent to forego formal service of process under subsection (7)(a). The fact that the Legislature explicitly named certain individuals that DCF must serve when it files a petition pursuant to section 119.07(7)(b) does not necessarily control our construction of section 119.07(7)(a), which contains no such provision.
Section 119.07(7)(b) requires DCF to serve those parties whose interests must be balanced by the court when it conducts *1286 the good-cause analysis. When DCF files such a petition, it is requesting the "immediate public release" of these records. It seems reasonable to assume that the Legislature thought it important, in such situations, to alert those parties whose interests will be affected by such release, allowing them to participate in the proceeding to determine whether good cause to release the records exists. When a private party files a petition pursuant to section 119.07(7)(a), it is unlikely that the party would know the identities and locations of the interested parties. Much of this information will be known only to DCF. To have included an explicit service of process requirement similar to the one contained in subsection 7(b) would have been unworkable (the petitioner cannot serve parties of whom he is unaware) and unnecessary (when DCF is served, it will then be able to alert the court to the identities of interested persons). It therefore seems more reasonable to conclude that the Legislature did not intend to forego formal service of process by failing to include an explicit requirement.
This civil action to make public the records that were otherwise confidential was commenced when Sun-Sentinel filed the section 119.07(7)(a) petition. Sun-Sentinel was then required to comply with the above-stated rules regarding service of process. Because these records are maintained by DCF, Sun-Sentinel was required to serve DCF with the petition. Because it did not, the circuit court erred in denying DCF's motion to dismiss for insufficient service of process and lack of personal jurisdiction.[10]

IV. HOME VENUE PRIVILEGE
We now consider the application of the home venue privilege to this case. The home venue privilege provides that, absent waiver or exception, venue in a suit against the State, or an agency or subdivision of the State, is proper only in the county in which the State, or the agency or subdivision of the State, maintains its principal headquarters. Fla. Pub. Serv. Comm'n v. Triple "A" Enters., Inc., 387 So.2d 940, 942 (Fla.1980); Carlile v. Game & Fresh Water Fish Com'n, 354 So.2d 362, 363-64 (Fla.1977).
The circuit court declined to apply the home venue privilege and the district court affirmed. The district court noted that the records at issue were maintained by DCF in Palm Beach County. Dep't of Children & Families, 839 So.2d at 792. Furthermore, Sun-Sentinel was not seeking a money judgment against DCF, nor a judgment respecting DCF's "official, non-record-keeping policies." Id. The court observed that cases applying the home venue privilege "almost universally ... involve actions seeking judgment directly against the agency for money damages or for declaratory relief binding the agency in regard to some policy or practice of the agency itself." Id. This case, on the other hand, merely involved a party "seek[ing] to exercise its right of access to public records maintained within the jurisdiction of the circuit court." Id.
The court thought that "it would severely burden the right of access to public records to require that all such actions ... be deemed within the home [venue] privilege of state government." Id. The court also stressed that "[n]one of the policies *1287 that motivated the adoption of the [judicially created] home [venue] privilege are present in this case." Id. Therefore, the district court found "no error with the trial court's denial of a change of venue." Id. The court held that "case[s] involving access to public records entirely located in one county ... may be brought where the records are being kept and where access is being denied." Id. at 793.
The district court's decision conflicts with the decision in Jacksonville Electric Authority v. Clay County Utility Authority, 802 So.2d 1190 (Fla. 1st DCA 2002), where the First District held that trial courts were bound to apply the home venue privilege unless one of the three recognized exceptions to the privilege was satisfied. The First District reversed the trial court's refusal to apply the home venue privilege even though application of the privilege to that particular case was "supported by none of the policy reasons" that gave rise to the home venue privilege. Id. at 1193.

A.
Florida's home venue privilege dates back to Smith v. Williams, 160 Fla. 580, 35 So.2d 844 (1948), where this Court distinguished between two different types of suits against state agencies. The first type is those suits
in which the primary purpose of the litigation is to obtain a judicial interpretation or declaration of a party's rights or duties under ... rules and regulations [promulgated by the state agency], where no unlawful invasion of a lawful right secured ... by the Constitution or laws of the jurisdiction is directly threatened in the county where suit is instituted.
Id. at 846-47. The second type is those suits
in which the primary purpose of the litigation is to obtain direct judicial protection from an alleged unlawful invasion of the constitutional rights of the plaintiff within the county where the suit is instituted, because of the enforcement or threatened enforcement by a state agency of rules and regulations alleged to be unconstitutional as to the plaintiff, and where the validity or invalidity of the rules and regulations sought to be enforced comes into question only secondarily and as incidental to the main issue involved.
Id. at 847.
Unlike those of the second type, which fall under what has now been termed the "sword-wielder" exception, those of the first type are subject to the state's home venue privilege. The reason for subjecting such suits to the home venue privilege is "to promote orderly, efficient, and economical government." Id. The home venue privilege allows for such suits to be "defended at a minimum expenditure of effort and public funds." Id. It also allows for a "uniformity of interpretation" and "prevents conflicting judicial rulings in different jurisdictions." Id.; see also Carlile, 354 So.2d at 364 ("Such a rule promotes orderly and uniform handling of state litigation and helps to minimize expenditure of public funds and manpower."); Triple "A" Enters., 387 So.2d at 943 ("The common law venue privilege allows for uniform interpretation by one court, thus promoting efficient and uniform rulings, and minimizing expenditure of effort and public funds.").
We have recognized only three exceptions to the home venue privilege. One exception exists in cases where the Legislature has by statute waived the privilege. Barr v. Fla. Bd. of Regents, 644 So.2d 333, 336 (Fla. 1st DCA 1994) (citing Henry P. Trawick, Jr., Florida Practice *1288 and Procedure, § 5-2 (1993 ed.)). The second exception, known as the "sword wielder" exception, "applies only where direct judicial protection is sought from an unlawful invasion of a constitutional right of the plaintiff, directly threatened in the county where the suit is instituted." Triple "A" Enters., 387 So.2d at 942. The third exception to the home venue privilege applies in those cases in which the governmental defendant is sued as a joint tortfeasor. Bd. of County Comm'rs v. Grice, 438 So.2d 392, 395 (Fla.1983).

B.
This case does not fall within any of the recognized exceptions to the home venue privilege. The Legislature has not statutorily waived the privilege for public records petitions. The petition was not filed as a "shield against the state's thrust." Fla. Dep't of Ins. v. Amador, 841 So.2d 612, 614 (Fla. 3d DCA 2003). Nor was DCF being sued as a joint tortfeasor.
Nonetheless, as the district court recognized, the reasons generally supporting the home venue privilege are not present in this case. It is not clear that requiring all such petitions to be filed and litigated in Leon County would "promote orderly, efficient, and economical government." Smith, 35 So.2d at 847. DCF already maintains regional offices at which the records in question are located. The personnel at these offices would be most familiar with the records and the facts of each case. A section 119.07(7)(a) petition does not implicate any of DCF's statewide policies or interests. The "good cause" proceeding is limited to determining whether the public interest in access outweighs the privacy interests of those who are the subjects of the records. This is necessarily a fact-based, case-by-case analysis. It seems that such inquiries could be conducted most efficiently in the county in which the records are maintained and the DCF personnel familiar with the records, as well as the interested parties, are located.
Additionally, requiring such petitions to be brought in Leon County would not promote a "uniformity of interpretation" nor "prevent[ ] conflicting judicial rulings in different jurisdictions." Id. The "good cause" analysis, by its very nature, requires a fact-specific, case-by-case determination. The determination of a circuit court in one county, determining that good cause exists to make public the particular records sought by the petitioner, will not bind DCF to any statewide policy or practice. Nor could such a decision be said to "conflict" with the decision of another circuit court that determines, in a different case, that good cause does not exist. In this sense, a section 119.07(7)(a) petition is fundamentally different from a typical lawsuit. The reasons that make the home venue privilege appropriate in those cases simply do not translate into this context.
The question, then, is whether the trial court was bound to apply the home venue privilege or whether the trial court could, in its discretion, refuse to apply the privilege in a case where applying the privilege would not further any of the policy reasons that support the privilege. We agree with the decision of the First District in Jacksonville Electric that a trial court must apply the home venue privilege unless one of the exceptions to the privilege is satisfied. However, we also believe that it would be appropriate to create a very narrow fourth exception to address this type of case.
In Grice, we created the "joint tortfeasor" exception to the home venue privilege, which provides that a trial court may refuse to apply the home venue privilege when the state agency is sued as a joint tortfeasor. We held that
a trial court has discretion to dispense with the home venue privilege when a *1289 governmental body is sued as a joint tortfeasor. The exercise of this discretion must be guided by considerations of justice, fairness, and convenience under the circumstances of the case.... The home venue privilege, although not absolute, should be given substantial consideration in this process along with the other circumstances presented and the interests of the other parties.
Id. at 395. We created this exception because we recognized that the beneficial purposes of the home venue privilege "promot[ing] orderly and uniform handling of state litigation and help[ing] to minimize expenditure of public funds and manpower"were "not furthered when the governmental defendant is sued as a joint tortfeasor." Grice, 438 So.2d at 394. "[T]he objective of minimizing public expenditures in the operation of the courts [was] not furthered when the home venue privilege result[ed] in multiple lawsuits," id. at 395, which was what resulted when trial courts were forced to sever lawsuits that otherwise would have been tried in a single proceeding.
For similar reasons, we now adopt a Grice-like exception for cases where a party petitions the court for an order to gain access to public records, and where the records sought are by law confidential and cannot be made public without a determination by the court, pursuant to the petition, that good cause exists for public access. In such cases, trial courts will have the same discretion they have in cases where the governmental defendant is sued as a joint tortfeasor. When such a petition is filed, and the governmental agency invokes the home venue privilege and moves to transfer the case to the county in which it maintains its principal headquarters, the trial court should consider the policy reasons that support the home venue privilege. The court should consider whether and to what extent those policies would be furthered by application of the privilege in the case before the court. Taking those considerations into account, the trial court's discretion should "be guided by considerations of justice, fairness, and convenience under the circumstances of the case." Grice, 438 So.2d at 395. Because the facts of this case bring it within this newly created exception, we approve the result reached by the district court below insofar as it is consistent with this opinion.

V. CONCLUSION
For the reasons just expressed, we disapprove the opinion of the district court below, and that of the Second District in Hubbard, to the extent they held that a motion to transfer venue is a request for affirmative relief that waives a timely asserted objection to personal jurisdiction. We also hold that a section 119.07(7)(a) petitioner is required to effect formal service of process on DCF. And finally, we approve the decision of the district court below insofar as it held that the trial court did not abuse its discretion in refusing to apply the home venue privilege. We agree with the First District's holding in Jacksonville Electric that a trial court must apply the home venue privilege unless one of the recognized exceptions to the privilege is satisfied. However, we now create a fourth exception to the privilege, similar to that announced in Grice and limited to cases such as this, where a "good cause" petition is filed to access otherwise confidential public records.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, QUINCE, and CANTERO, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] See § 39.202, Fla. Stat. (2002).
[2] We have jurisdiction to review the decision of the district court under article V, section 3(b)(3) of the Florida Constitution.
[3] "It is the policy of this state that all state, county, and municipal records shall be open for personal inspection by any person." § 119.01(1), Fla. Stat. (2002).
[4] We stress that our jurisdiction to review the decision below is not based on the intradistrict conflict between the decision below and the decision in Dimino.
[5] Hubbard involved a request for change of venue pursuant to section 47.101(1)(b), Florida Statutes (1979), which provides that a party may move for a change of venue if that party believes that he or she will not receive a fair trial in the court where the action is pending because that party is so odious to the inhabitants of the county that he or she could not receive a fair trial. 413 So.2d at 1192. Here, of course, we are dealing with a motion based on improper venuea defense specifically enumerated in Florida Rule of Civil Procedure 1.140(b).
[6] "[I]t seems apparent that the Hubbard decision incorrectly classified a motion for change of venue as a request for affirmative relief. Clearly, appellant's motion to change venue was a defensive measure and did not waive the jurisdictional issue." Dimino, 572 So.2d at 555.
[7] Similar reasoning was employed in Cumberland Software, Inc. v. Great American Mortgage Corp., 507 So.2d 794 (Fla. 4th DCA 1987), where the court held that the defendant did not waive his objection to personal jurisdiction by filing a compulsory counterclaim. Because the compulsory counterclaim would have been waived had it not been raised at the time of the defendant's answer, see Fla. R. Civ. P. 1.170(a), filing the compulsory counterclaim was "solely a defensive measure," and "did not waive [defendant's] right to challenge the court's jurisdiction." 507 So.2d at 796.
[8] In Babcock, we approved the decision in Hubbard and disapproved the decision in Dimino. 707 So.2d at 705 n. 7. However, that holding was with respect to a precise issue: whether an objection to the court's personal jurisdiction can ever be waived. Our opinion resolved a conflict between the Third District's decision in Whatmore v. Babcock, 685 So.2d 82 (Fla. 3d DCA 1996), approved in result, 707 So.2d 702 (Fla.1998), and the Second District's decision in Hubbard. Whatmore held that "once an objection based upon lack of jurisdiction over the person is timely interposed, it is preserved for all purposes and is not waived because affirmative relief is also sought." Babcock, 707 So.2d at 703 (quoting Whatmore, 685 So.2d at 84). Hubbard, on the other hand, held that "a timely objection to personal jurisdiction may nevertheless be waived ... [by] a defendant who goes beyond matters of defense and seeks affirmative relief." Babcock, 707 So.2d at 703 (quoting Hubbard, 413 So.2d at 1193). It was with respect to this issue that we approved Hubbard and disapproved Dimino. See Babcock, 707 So.2d at 705 n. 7.
[9] In this case, the motion to transfer venue was based on "improper venue," which is a defense specifically enumerated in Florida Rule of Civil Procedure 1.140(b). Under Florida Rule of Civil Procedure 1.140(h)(1), the objection to improper venue as well as the objection to personal jurisdiction are waived if not presented either by motion under rule 1.140(b) or, if no motion is made, in a responsive pleading. See Fla. R. Civ. P. 1.140(h)(1) ("A party waives all defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule or, if the party has made no motion, in a responsive pleading...."). That is why we have spoken of motions to transfer venue "filed simultaneously with" an objection to personal jurisdiction. We note, however, that a motion to change venue made subsequent to a timely interposed objection to personal jurisdiction, if not itself waived, would not waive the objection to personal jurisdiction. See, e.g., § 47.101, Fla. Stat. (2002); § 47.122, Fla. Stat. (2002).
[10] We also note that Sun-Sentinel should not have filed the petition in the pending criminal action to which neither it nor DCF was a party. The proper procedure would have been to file the petition as a separate action. It then could have requested that the "good cause" proceeding be conducted by the same judge that was presiding over the criminal action.